All right, our next case for argument is 23-1810 Xiang Yin He Chang Tuan Inc. v. Edison Chinese Chorus. You've got to be impressed that I got that right. It was very good. I know. My clerk is 100% Chinese, so she translated for me. There you go. Let's go. Good afternoon, or good morning still. May it please the Court. The error below is from a mis-weighing of the evidence concerning ownership, and once that was done, everything fell. Generally, what the opinion did is it looked at inadmissible hearsay from two people from the chorus. So is this about Mrs. Tan? And so she was the owner of the marks? Yes, it was Mrs. Tan, the owner of the mark. And this is the bulk of the opinion and the beginning of the end for all the arguments. But what they did is they weighed the testimony from four witnesses that was all consistent, that said Mrs. Tan was the owner, and had licensed them, against the people who came later to this case, 10 years after the creation of the mark, who submitted interrogatory answers and testimony that said they had never heard of this origin of the marks and the licensing. But the board commented that the evidence was, at best, ambiguous, and that the statements you're referring to were all from parties that were self-interested without any additional corroborating evidence or anything else to suggest that over this lengthy period of time that the ownership was in the name of Mrs. Tan. Yeah, they did that, and everything they relied on was incorrect. For example, Ms. I. Singh Jello put in testimony that Mrs. Tan developed it, created it, and licensed it. But then the board, on page 29, cited testimony for her, which is the foundation of their opinion, that the choosing of the name was informal. The question she was asked, if they rely on this, my question was, did anybody put a limitation on the use of these names? Now, if you look at this in context, the witness has no idea what this means, limitations on the use of these names. And the answer that they're underpinning this whole opinion on is, I don't know, the name were they proposed but not used, so there was no limitation. And where are you getting that they're undergirding the entire opinion? This is the beginning of the ownership and the creation of the name. Right, but it goes on for another 40 pages, and it goes, but as Judge Lynn pointed out, I mean, on each of the sub-factors of this question, you acknowledge, right, that you as the opposer has the burden. Yes. And as I read the opinion, there's a lot in here. It's very detailed. They dealt with a lot of the evidence. But as Judge Lynn said, at the end of the day, as I understood the opinion, having examined all the evidence, they found you didn't carry a burden because you only relied on the testimony of interested parties, no scrap of supporting documentary evidence. So I guess I read it a little differently. Not that they relied so much on crediting the other side, but in looking at the entire record and everything you submitted, you didn't carry a burden. Am I wrong in my reading of the case? I think that the Board found more credibility with the two other witnesses. Mr. Phan, who started 10 years late in 2011, and Mr. Song, who started in 2017 after the course had split. But am I wrong? Everybody's interested in here. This is a war in New Jersey between two courses. There is no more burden. Am I wrong that they pointed out that all of your witnesses were interested parties and there was not a scrap of documentary evidence to support the assertions that would have been necessary in order for you to carry a burden? You're right, they were interested, as was everybody. You're wrong that there's no scrap of evidence. All the evidence supports our view. It starts with that testimony that was never rebutted because there was no witness who knew anything about those facts on the other side. So that's completely unrebutted. Then you have what they did. They used the mark, and the mark is for a live choral performance. So it gets confusing when you read the transcripts because they also named a chorus after that. So the witnesses in their testimony get a little confused as to... And maybe it was intentional by the other attorney as to whether you're talking about the name of the chorus or the trademark that goes with the live performances. But those performances were only with Mr. Bin Liu, the musical director's performances. And these marks mean something very specific to these people. And they only come from him and his performances of traditional Chinese music. So then you look at the fact that every performance that used the mark, beginning in 2002, when there was no applicant, in February of 2002, the first published use of the mark was Mr. Bin Liu. It was this chorus of homeland voices, and there was no Edison created yet. So he used it there. Then he joins and forms up the applicant and uses it in their performance. So the brochures say Edison, and then they say Mr. Bin Liu, musical director, and then it says chorus of homeland voices, which is what he used as a description of his performances. And that goes on. So we see every brochure for 17 years supports us. Then as soon as he leaves... But does that go to the ownership creation of the marks, the use of a mark by Ms. Tam or a licensee, the identity of the licensee? Yes, it's all consistent. As soon as he leaves the chorus... It may be consistent, but how does it... And your burden was to establish all of those factors. That's what the board's opinion goes through, each of those factors, and looks at the evidence with regard to each of those. Right, and it weighs it with that evidence that... For example, it says... I think that that's an incorrect notion that they're only looking at our side. On page 35... I'm sorry. I didn't mean to suggest... I said that. I misspoke. I didn't mean to suggest that they only looked at your side. But if somebody has that notion, it says Mr. Fan on page 35, who was president of applicant from 2001 through 2006, stated, I never heard of this license and the ownership. Okay? Mr. Fan joined this chorus in 2011. He was not there. So, of course, he never heard of this. He was already fighting with Mr. Bin Loo over the chorus. Well, is there any document... I mean, as I read the board, I mean, there was no documentary evidence reflecting the license, any of its terms or its duration. Am I wrong about that? I think they said that. I think there's circumstantial evidence. Basically, we're saying here you can't... I think the board said there's no documentary evidence. I think there's documentary evidence because of all that history, which is circumstantial evidence that there was a license. And then she signs an assignment to an appellant, and she files a trademark application. That's all evidence of ownership and licensing. Can we have oral agreements and trademark practice? And I believe yes. And this is basically saying no, you can't have an oral license because you have to have documents showing that license. That can't be the standard. That would be new law. So what you'll find is every factual finding in here relies on the other side in part, and every one of them is wrong. They can be summed as saying no one on the other side had heard of the license. And these are all people who came 10 years after the license came into being and after the marks were created. There's statements that Mrs. Tan wasn't involved in the chorus. That is remarkably not correct. She was involved in every performance. She wrote the beginning of the performance, the statements that were made, and she worked behind the curtain of every single performance. But that was a finding that the board made. The dispute here is not entirely unique in the sense that over the years many, many musical groups have had disputes over who owns trademarks. And in some cases it's determined that the manager of the group possessed the trademark. Or in other circumstances, the lead singer owned the trademark. And in most circumstances, similar to the facts in this case, the parties involved are interested in the music, they're interested in the services, the performances, and they're not interested in the nuances of trademark proper ownership. But when a dispute arises, this has to be sorted out under the peculiarities of trademark law. And there are all sorts of nuances that you're well aware of. You know, the assignment has to convey goodwill. Okay, a license has to specify that the licensor will exercise control over the nature and quality of the services, et cetera, et cetera. There are all these little nuances that come into play. In every one of these cases it comes down to sort of the facts. What does the evidence show? And here you've got basically 20 years or so of performances, and now where there is a dispute, you have to look back and sort it out. But all of these pieces of evidence have to fit under the rubric of these arcane trademark principles. And it seems to me that that's what the board did. They carefully looked at every piece of evidence, concluded that the evidence revealed certain things, concluded that some of the evidence was ambiguous, and left them without clear guidance. But they looked at everything and concluded that Edison properly owns the mark and that the opposition fails. And now here we are, and your burden is to overcome the substantial evidence in this record and this fairly lengthy analysis. And I will agree with you. I'm sympathetic to your clients' concerns because I'm sure that over the years sort of people just took for granted that, you know, there's no question who owns this and who owns that and who controls this and who controls that. But now that there's a dispute that has to get sorted out, while I'm sympathetic to your clients' cause, I'm just having a hard time concluding that we should overturn this based on substantial evidence. There is no evidence on the other side. I don't know if you can say that. There's evidence that the Edison Chinese Chorus used this mark over the years. That Mr. Bin Liu, as a musical director, used the mark. Sure, he was the musical director, but it was the chorus that performed the service. The service is a live choral performance, and he directed it, and he ran it, and he chose the music. He directed it, he ran it, he chose the music, but he didn't perform the service himself. The chorus did. I mean, you can't say there's no evidence. There's evidence. But that evidence could be attributed to him as well as them. And what's on their side is from these two newcomers who had no knowledge of the facts. The reason why we're here is, and this to me is what the case turns on, in Appendix 1108 to 1117. It's a testimony of Mr. Fan, and he's the newcomer. The board thought he was there the whole time. He was not. He came in 2011. And what does he say? He says, once Mr. Bin Lieu left, we looked to see whether Mr. Bin Lieu had gotten a trademark for his name, and we didn't want to fight with him directly, so we didn't go to him and talk about it. We filed this trademark application, and I asked for 10 minutes, did you do an investigation as to whether Mr. Bin Lieu's rights were correct, whether he had a license or not? He wouldn't answer the question. Anybody reading this, I think, will believe that there's something wrong here. He then, I keep pushing him, and he says, a friend told me. And I said, who is that friend? He hemmed and hauled, he withdrew the friend, and then said, no, he did no investigation. So we have, but he did check off the box to the trademark office that no one had made another claim on this trademark. He had done no investigation, even though he knew Mr. Bin Lieu was out there and is out there today using the same marks, because he believes they're his. That's why we're here, and I don't think there is a scintilla of evidence in their favor alone that you can't attribute to Mr. Bin Lieu and his people. Okay, thank you, counsel. This case is taken under submission.